IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID COIT                    :     CIVIL ACTION
                              :
        v.                    :
                              :
CITY OF PHILADELPHIA          :     NO. 08-4744

MEMORANDUM

McLaughlin, J.                                    May 11, 2010

This is a civil rights case against the City of Philadelphia in which the plaintiff alleges that he was subjected to excessive force when he was arrested on June 23, 2006, for disorderly conduct. Prior to his own arrest, the plaintiff had been videotaping the arrest of his son by Philadelphia police. The complaint brings federal claims under § 1983 and state law claims for negligent hiring against the City of Philadelphia. None of the individual officers involved is named as a defendant.

The City has filed a motion for summary judgment on the ground that the plaintiff has failed to develop any evidence of a policy, pattern, or practice sufficient to satisfy the requirements for municipal liability for § 1983 claims set out in Monell. The motion also argues that the plaintiff's state law claim for negligent hiring is barred by Pennsylvania's Political Subdivision Tort Claims Act. In his opposition to the motion and at oral argument, the plaintiff contends that his Monell claim is

based on a failure to train the officers on the use of excessive force.

I. Summary Judgment Record

The facts concerning the arrest of the plaintiff are in dispute. The Court accepts the plaintiff's version of events for purposes of this motion. The plaintiff states that while he was videotaping his son's arrest, he approached the arresting officers to inquire about his son's arrest. The police officers refused to inform him as to the reasons for his son's arrest and ordered that he hand over the video and remove himself from the scene. When the plaintiff refused to turn over the video and to stop inquiring as to the reasons for the arrest of his son, the police officers arrested the plaintiff for disorderly conduct. The plaintiff claims that the officers used excessive force and undue physical brutality in making the arrest.

In opposing the motion for summary judgment, the plaintiff relies on the testimony of the officers about their training, the City's answers to interrogatories, and its production of documents. At his deposition, counsel for the plaintiff asked Officer Joseph Slobodrian what training he received between 2001 and 2006. Officer Slobodrian responded that he received training on narcotics, computers, bombs, tasers, and CIT training for dealing with mental disorders. Officer Brad

Lukach was asked what training he had at the police academy. He said that he had basic police officer training and force continuum training. He described force continuum training as steps an officer is supposed to take in escalating order of severity to defend himself while doing his job: police presence, verbal commands, control holds, and physical force, including deadly force. Officer Ramos was asked what training he had between his graduation from the police academy in 2003 and the incident in this case. He stated that he has received "MPO" training every year. He was not asked to describe "MPO" training further.

The parties also presented Police Directive 22 that sets out the excessive force policy of the police department and is given to each officer. It states in relevant part:

II. POLICY

> A. The primary duty of all police officers is to preserve human life. Only the minimal amount of force necessary to protect life or to effect an arrest should be used by any officer. **Excessive force will not be tolerated.** Officers should exercise all safe and reasonable means of control and containment, using only the amount of force necessary to overcome resistance. The application of force by a police officer should be guided by principles found in the 'Force Continuum' which are:
>
> \* Mere presence of police officer(s)
> \* Verbal persuasion/warnings
> \* Hands-on techniques/control holds

* Non-lethal force
                    * Deadly force

        B.      Additionally, personnel will not
                unnecessarily or unreasonably endanger
                themselves and others in applying these
                guidelines to actual situations.

        C.      Though many officers may be at the
                scene of a police incident where force
                is being used, some officers may not be
                directly involved in taking police
                action.  As officers, we have an
                obligation to protect the public and
                other officers.  Therefore, it shall be
                the duty of every officer present at
                any scene where force is being applied
                to either stop or attempt to stop
                another officer when force is no longer
                required.  Your actions will both
                protect the officer from civil or
                criminal liability and the civilian
                from serious injury.

II.  <u>Analysis</u>

To prevail on a § 1983 claim against a municipality, a plaintiff must identify a "policy" or "custom" that caused the plaintiff's injury.  <u>Bd. of Cty. Com'rs of Bryan County v. Brown</u>, 520 U.S. 397, 403 (1997).  To establish liability, the plaintiff must show that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged:  "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  <u>Id.</u> at 404.

4

Where the alleged wrongdoing is inadequate training, a municipality may be liable under § 1983 only where the failure to train "amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 389 (1989). To show deliberate indifference, a plaintiff must show that a training program is inadequate and that the inadequate training can justifiably be said to represent municipal policy. Id. at 390. The focus in failure to train cases is on the "adequacy of the training program in relation to the tasks the particular officers must perform." Id. at 390-91. Where the need for "more or different training is so obvious and the inadequacy so likely to result in the violation of constitutional rights," then the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. Id. at 390

The plaintiff has fallen well short of his burden under Monell. The plaintiff relies on a few narrow questions of the officers at deposition concerning their training. He did not explore their testimony at the deposition. Nor did the plaintiff take any testimony from any supervisor or person responsible for training, nor has he presented any evidence as to what the allegedly missing training would consist of or how it would have prevented the incident in question. In addition, each officer did receive Directive 22, the City's excessive force policy.

5

There is no contention that the City's excessive force policy is constitutionally infirm. The Court will grant summary judgment on the § 1983 claim.

The Court will also grant summary judgment on the state law negligence claim because such a claim is barred by the Political Subdivision Tort Claims Act, 42 Pa. C.S.A. § 8541, et seq.

The Tort Claims Act provides broad immunity to the City of Philadelphia against tort claims. The Act states:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

42 Pa. C.S.A. § 8541.

The Pennsylvania Supreme Court has held that this creates "the absolute rule of governmental immunity" and represents "the expressed legislative intent to insulate political subdivisions from tort liability." Mascaro v. Youth Study Center, 514 Pa. 351, 561, 523 A.2d 1118, 1123 (1987). The phrase "any injury" means all injuries, "whether physical, mental, reputational, or economic." E-Z Parks, Inc. v. Philadelphia Parking Authority, 110 Pa. Commonw. 629, 637, 532 A.2d 1272, 1277 (1987), alloc. denied, 519 Pa. 656, 546 A.2d 60 (1988).

A plaintiff can recover against the City of Philadelphia only in those limited instances permitted by the Tort Claims Act. Section 8542 provides for a limited waiver of that immunity in eight narrowly drawn exceptions:

    (1)  operation of motor vehicles;

    (2)  care, custody, and control of personal property;

    (3)  care, custody, and control of real property;

    (4)  dangerous conditions of trees, traffic controls and street lighting;

    (5)  dangerous conditions of utility service facilities;

    (6)  dangerous conditions of streets;

    (7)  dangerous conditions of sidewalks; and,

    (8)  care, custody, and control of animals.

42 Pa. C.S. § 8542(b)(1)-(8).

The plaintiff's negligence claim does not fall within any of the specifically enumerated exceptions to the immunity conferred by the Act. The Court, therefore, will grant summary judgment on this claim as well.

An appropriate order shall issue separately.